# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

ANNE M. JOHNSTON,

                Plaintiff,

v.                                    NO. CV-10-01067-PHX-JRG

PATRICK R. DONAHOE,

                Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the court is the plaintiff's Motion for Summary Judgment [Docket 24]. For the reasons discussed below, this motion is **GRANTED**.

## I.    Background

This case arises out of allegations by the plaintiff, Anne Johnston, that she was harassed, retaliated against, and wrongfully terminated by her employer, the United States Postal Service ("USPS"). According to the complaint, Ms. Johnston was employed by USPS from May 1984 until June 23, 2005. (First Am. Compl. [Docket 6], at ¶¶ III-IV). Ms. Johnston asserts that while she was employed by USPS, she "met her work performance expectations and received satisfactory or better evaluations," and "had an unblemished record in all respects until the events alleged [in the complaint] began." (*Id.* ¶ IV).

On or about October 12, 2004, Johnston applied for a position as the postmaster of a small rural post office in the predominantly Mormon community of Young, Arizona. (*Id.*) Johnston was selected as one of three finalists for the position. (*Id.*) Three weeks later, on or about October 28, 2004, Johnston was called as a witness in an EEOC hearing regarding a coworker's

discrimination complaint.  (*Id.* ¶ VII.)  Johnston states that she testified truthfully regarding her knowledge of the discrimination.  (*Id.*)

Following her testimony at the EEOC hearing, Johnston claims that she was harrassed in the workplace.  (*Id.*)  She identifies the following incidents:  "someone poured perfume into her locker knowing that she was allergic to perfume," "[c]ertain items on her desk and tools that she used were moved or tampered with," and "[d]ocuments that she was responsible for processing were placed in inappropriate locations, making it difficult for her to discover that they had not been processed."  (*Id.* ¶ VIII).  Johnston claims to have "reasonably believed that these acts were being perpetrated by coworkers who were upset that she supported the discrimination complaint of the coworker for whom she had testified," but does not offer any basis for this belief.  (*Id.*)

On or about December 3, 2004, Johnston was notified that she had not been selected for the postmaster position.  (*Id.*)  She believes that she was not selected because of her religion.  She explains that the position was located in a predominantly Mormon community, and the successful candidate was a Mormon while she is not.  (*Id.*)  Additionally or possibly alternatively, Johnston believes that she was not selected out of retaliation for her participation in the EEOC hearing in October.  (*Id.* ¶ X).  Based on these beliefs, Johnston began the process for filing an internal complaint of discrimination.

On February 15, 2005, Johnston was pulled over by Phoenix police officers at 2:45 a.m.. According to the officers' report, Johnston was driving with her headlights off and her license plate was covered with cardboard.  (Field Investigation Report, Ex. 16 [Docket 25-3]).  The officers further observed that Johnston was dressed completely in black and was wearing a pair of underwear as a makeshift mask.  (*Id.*)  A consent search of her car revealed a flashlight, a

screwdriver, latex gloves, a rock wrapped in a napkin, and a box full of confidential USPS documents. (*Id.*) Johnston informed the officers that she was a USPS employee. (*Id.*) The officers determined they did not have a basis to arrest Johnston, but notified USPS of the incident and their findings. (Letter from Jacqueline Cross, Postal Inspector, Ex. 16 [Docket 25-3]).

Four days later, on February 19, 2005, Johnston was placed on unpaid emergency off-duty status pending an investigation into the report that she had taken confidential USPS documents from the post office. (Compl. ¶ ¶ XII). On June 23, 2005, Johnston was terminated from her employment with USPS. (*Id.*) After exhausting her administrative remedies and receiving a final denial of her claims from the EEOC, Johnston filed suit in this court on September 1, 2010. Her complaint contains three counts: 1) "Hostile Environment Retaliation"; 2) "Discrimination and Retaliation in Promotion"; and 3) "Retaliatory Termination." The USPS has filed the instant motion for summary judgment, which is now ripe for review.

## II.   Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence

from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256.   Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).   The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

**III.   Discussion**

**A.   Count One: "Hostile Environment Retaliation"**

The first count of the complaint alleges that Johnston was the victim of "hostile environment retaliation" by her coworkers in violation of 42 U.S.C. § 2000e-2(a).   She claims that as a result of her testimony at the EEOC hearing, "someone" sprayed perfume in her locker, unplugged her adding machine, and moved or misfiled documents.   (Am. Compl. [Docket 6], ¶ VII).   She further states that she reported these incidents to her supervisor, and alleges that USPS failed to take appropriate steps to remedy the problem.   (*Id.*)

To establish a prima facie case of retaliation, the plaintiff must show that she engaged in protected activity, that she suffered an adverse employment action, and that there is a causal connection between the protected activity and the employer's action. *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988).   "To show the requisite causal link, the plaintiff must present evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982).   "The causal link may be established by an inference derived from circumstantial evidence, such as the employer's knowledge that the employee engaged in protected activities and the proximity in time between the

protected action and the allegedly retaliatory employment decision." *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988). If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to offer a legitimate, non-discriminatory explanation for the challenged action. *Dawson v. Entek Intern.*, 630 F.3d 928, 936 (9th Cir. 2011). If the defendant does so, the burden shifts back to the plaintiff to show that the defendant's explanation "is a mere pretext for impermissible discrimination." *Id.* (citing *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)).

To constitute an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). However, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* A hostile work environment may be the basis for a retaliation claim under Title VII. *Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000). However, "[h]arassment is actionable only if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not constitute a hostile or abusive work environment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008).

Here, Johnston's testimony at the EEOC hearing is protected activity. However, Johnston has not offered more than a scintilla of evidence to show that her complaints were "sufficiently severe or pervasive to alter the condition of her employment and create an abusive working

environment." *Id.*   The "incidents" Johnston complains of—smelling an excessive amount of perfume, finding misplaced documents, and noticing unplugged machinery—while possibly frustrating, are simply the type of everyday annoyances that sometimes occur in the workplace. *See Burlington N.*, 548 U.S. at 68.   Johnston has not identified the individual or individuals she suspects were responsible for committing these acts.   Furthermore, she has offered no evidence to suggest that the occurrences were in any way related to or directed at her, let alone to support her contention that they constituted a pattern of harassment intended as retaliation for her testimony at the EEOC hearing.   Johnston argues that USPS failed to respond adequately to her complaints; however, she has not explained what alternative course of action USPS could have taken, nor has she offered any evidence or argument that would support a finding that the USPS's alleged inaction was in any way related to her testimony at the October 2004 hearing.

Johnston has not offered anything more than conclusory allegations to support her claim that she was retaliated against by USPS for participating in the EEOC hearing in October 2004. Accordingly, the motion for summary judgment is **GRANTED** and count I of the plaintiff's complaint is **DISMISSED with prejudice.**

## B.  Count Two: "Discrimination and Retaliation in Promotion."

Next, the plaintiff challenges USPS's decision not to select her for a promotion to postmaster.   Johnston has two theories explaining why she did not receive the promotion.   First, she claims that she was not promoted because she is not Mormon.   Second, she claims that she was not promoted because the USPS was retaliating against her for her participation in the October 2004 EEOC hearing.

### a.  Religious Discrimination

42 U.S.C. § 2000e-16 protects employees of certain government entities and agencies, including the USPS, from discriminatory employment practices based on race, color, religion, sex, or national origin.   42 U.S.C. § 2000e-16.   Johnston has admitted that her claim for religious discrimination was not substantiated by discovery and cannot be sustained on the evidence available.   (Pl.'s Resp. to Def.'s Mot. for Summ. J. [Docket 26], at 4).   Accordingly, the defendant's motion for summary judgment is **GRANTED** with respect to Johnston's religious discrimination claim.

### b.  Failure to Promote Based on Retaliation

Johnston also claims that the USPS failed to promote her in retaliation for her participation in the EEOC hearing, an activity protected by 42 U.S.C. § 2000e-3.   42 U.S.C. § 2000e-3(a) states in pertinent part:   "It shall be unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."   42 U.S.C. § 2000e-3(a).   To establish a prima facie case of retaliation, a plaintiff must show 1) that she engaged in protected activity, 2) that an adverse employment action was taken against her, and 3) that there was a causal connection between the protected activity and the adverse employment action.   *Porter v. Cal. Dep't of Corrs.*, 419 F.3d 885, 894 (9th Cir. 2005).   Once a plaintiff successfully establishes that she has a prima facie case, the burden shifts to the defendant to provide a legitimate, non-retaliatory reason for its actions.   *Id.*   If the defendant is able to do so, the burden shifts back to the plaintiff to submit evidence that the defendant's proffered reason was a mere pretext for retaliation.   *Id.*

- 7 -

In this case, the plaintiff has not provided a single piece of evidence to show a causal connection between her testimony at the EEOC hearing and her non-selection for the postmaster position.   In fact, USPS asserts that person responsible for making the final selection did not even know of Johnston's testimony at the EEOC hearing.   (Def.'s Statement of Facts in Support Mot. for Summ. J. [Docket 25], at 3).   Moreover, USPS has provided a legitimate, non-discriminatory explanation for why it selected another candidate for the available position.   (Mot. for Summ. J. [Docket 24], at 5).   USPS has explained that the successful candidate, Jill Fortuny, had more relevant experience than Johnston, possessed good interpersonal skills, and had worked for several years in the town where the position was located.   (*Id.*)   Fortuny had the strongest educational background of the finalists, as she graduated *cum laude* from Northern Arizona University.   (EEO Investigative Affidavit, Ex. 8 [Docket 25-2], at ¶ 13).   Additionally, she had a history of involvement in the Young community, including involvement on several community boards. (*Id.*)   USPS has further explained that of the three finalists for the position, Johnston was the only one who did not have supervisory experience as a temporary postmaster or Officer in Charge. (Def.'s Statement of Facts in Support Mot. for Summ. J. [Docket 25], at ¶ 9); *see also* (EEO Investigative Affidavit, Ex. 8 [Docket 25-2], at ¶ 13).   Johnston also did not have any connection to the town where the position was located.   (*Id.*)   Experience, education, interpersonal skills, and ties to the community are all legitimate, non-discriminatory criteria for selecting a postmaster. Johnston's response to the motion for summary judgment does not address this proffered explanation.   (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J. [Docket 26]; Pl.'s Resp. to Def.'s Statement of Facts and Additional Facts in Support of Resp. Mot. for Summ. J [Docket 27]).

- 8 -

Because USPS has offered a legitimate explanation for its decision to promote another candidate over Johnston, the burden shifts back to Johnston to show that the proffered reason was pretextual.   At the summary judgment stage, it is enough for the plaintiff to submit only a minimal amount of evidence to demonstrate that there is a material fact regarding pretext.   *Terry v. City of San Diego*, 380 Fed. Appx. 591 (9th Cir. 2010) (citing *Nicholason v. Hyannis Air Servc., Inc.*, 580 F.3d 1116, 1127 (9th Cir. 2009)).   In this case, Johnston has not argued that USPS's explanation was a mere pretext for retaliation.   Accordingly, the court **FINDS** that no reasonable trier of fact could conclude from the evidence provided that USPS's explanation for selecting the new postmaster was pretexual.   For these reasons, the motion for summary judgment is **GRANTED**. Count II of the plaintiff's complaint is **DISMISSED with prejudice**.

### C.   Count Three:   Retaliatory Termination

Finally, Johnston claims that the USPS fired her in retaliation for her participation in protected activity.   Johnston admits that the USPS terminated her employment because she removed confidential documents from the post office.   (Pl.'s Resp. to Def.'s Mot. for Summ. J. [Docket 26], at 5).   However, she argues that these documents were relevant to her EEO harassment claim, and therefore, that copying and taking them amounted to protected activity under Title VII.   (*Id.*)

There are three elements to a retaliation claim under Title VII:   1) the employee engaged in statutorily protected activity, 2) she was terminated from her employment or suffered an adverse employment decision, and 3) a causal connection between the first two elements.   *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996).   "The critical question is whether a plaintiff has proven . . . that the defendant intentionally discriminated or retaliated

against the plaintiff for engaging in protected activity." *Wrighten v. Metro. Hosps., Inc.*, 726 F.2d 1346, 1354 (9th Cir. 1984).

In this case, Johnston has asserted that "the Post Office seized upon the fact that she had copied [USPS] documents and taken the copies out of the workplace as a basis to terminate her employment." (Pl.'s Resp. to Def.'s Mot. Summ. J. [Docket 26], at 3). Johnston further asserts that USPS "knew when they made the decision to terminate [her] that she had copied the documents for intended use in connection with her EEO complaint." (*Id.*) Meanwhile, USPS claims that Johnston's termination was not in retaliation for protected activity. Rather, according to USPS, Johnston was terminated from her employment for removing confidential customer information from the post office and possessing it in her car when she was stopped by the police in the middle of the night. (Mot. Summ. J. [Docket 24], at 7). USPS explains that Johnston's actions breached the USPS's trust, USPS policies, and the terms of her employment. USPS points to the following statement of the arbitrator who denied the plaintiff's union grievance:

> The fact remains that [USPS] had just cause for removing the Plaintiff for copying and retaining for personal use . . . Box Applications containing personal and confidential information of customers. Such a breach of trust must be taken seriously by [USPS,] otherwise employees will come to believe that unacceptable conduct such as self-help is sanctioned by the [USPS]. Customers must be assured of confidentiality . . . .

(Def.'s Statement Facts in Supp. Mot. Summ. J. [Docket 25], at 7-8).

In opposition to the motion for summary judgment, Johnston has offered only two exhibits: 1) the EEO Investigative Affidavit that contains her own written statement of the facts, and 2) a USPS Management Statement finding that USPS had just cause for removing Ms. Johnston. (Pl.'s Statement of Facts, Exs. A & B [Docket 27-1]). The Management Statement states in pertinent part:

- 10 -

> Anne Johnston abused her position as a box clerk . . . to obtain records for which there is no reasonable explanation.   When initially asked why she had these records she gave no statement. When given another opportunity to answer at a later date, she stated they were for an E.E.O. that she had filed.   Management contacted Human Resources and had them look at the E.E.O. and there is not one word in her statement that alleges she had to remove P.O. Box records to substantiate her claim. . . .   The acts in question have breached the trust between the [USPS] and Miss Johnston.   These records that Miss Johnston had in her possession include private information of Postal Customers.   The [USPS] is trusted by the customers to keep this information confidential. . . .   We find this offense serious in nature.

(*Id.*)   Johnston admits that documents containing customer information were found in her car, but argues that she did not steal government property because the documents were photocopies rather than originals.   (Pl.'s Resp. Def.'s Statement of Facts [Docket 27], ¶¶ 16, 18, 36-38). Additionally, Johnston claims that her actions were not in violation of USPS regulations because the regulations "fail[] to address the situation in which preserving information by photocopying USPS records is necessary or appropriate in order for an employee to exercise the right to oppose practices made unlawful by Title VII."   (Pl.'s Resp. Def.'s Statement of Facts [Docket 27], ¶ 21). She concedes that "[t]he ultimate reason for Johnston's termination was her 'unauthorized possession of postal records'" but nonetheless claims that this was "arguably protected conduct" because she intended to use those documents to "substantiate her claim of systematic harassment." (Pl.'s Resp. Mot. for Summ. J. [Docket 26], at 5).

The Ninth Circuit has adopted a balancing test to determine whether an employee's conduct constitutes protected activity under Title VII.   *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996).   The court must balance "the purpose of the Act to protect persons engaging reasonably in activities opposing . . . discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of

personnel." *Id.* (quoting *Wrighten v. Metro. Hosps., Inc.*, 726 F.2d 1346, 1355 (9th Cir. 1984). An activity will be protected only if "it is 'reasonable in view of the employer's interest in maintaining a harmonious and efficient operation.'" *O'Day*, 79 F.3d at 763.

Johnston argues that her actions were reasonable for the following reasons: 1) she did not take the original documents, but instead made photocopies; 2) she did not show the documents to anyone until she was pulled over by the police; 3) she made notations on the documents relating to "suspicious circumstances that appeared to her to be actions by coworkers in retaliation for her having testified in the EEOC hearing"; 4) no member of the public became aware of the fact that the documents were removed from the post office; and 5) the confidential information in the documents included "address and telephone number information which is generally available to the public in books that are distributed free of charge" as well as online.

What Johnston has failed to do is provide any evidence or explanation to suggest that it was necessary or reasonable for her to remove the documents from the post office in order to substantiate her harassment claim. Johnston has not asserted that the documents themselves contained any information which would substantiate her claim of harassment. Rather, she states that someone had moved the documents to prevent her from processing them. The only information in the documents that she asserted was in any way related to her EEO claim was her own notations which she made after taking the documents. Johnston's own actions—making notations on the confidential documents after she copied them—do not transform her unauthorized removal of confidential USPS records into protected activity. *See O'Day*, 79 F.3d at 763-64 ("The opposition clause protects reasonable attempts to contest an employer's discriminatory practices; it is not an insurance policy, a license to flaunt company rules or an invitation to

dishonest behavior."). Even taking the evidence in the light most favorable to Johnston, photocopying and removing allegedly misplaced documents from USPS was not a reasonable act to substantiate her harassment claim. Therefore, it does not appear that Johnston's actions were consistent with the Congress's purpose in enacting Title VII. *See O'Day*, 79 F.3d at 763. Moreover, the USPS has a legitimate interest in its consumers' confidential information and from protecting that information from abuse or misuse by employees. For these reasons, the court **FINDS** that Johnston's actions in copying and taking confidential USPS documents were not reasonable in view of the USPS's interest in maintaining a harmonious and efficient operation.

In her response to the motion for summary judgment, Johnston spends some amount of time arguing that she was a loyal employee and that the USPS should not have terminated her employment. Whether or not Johnston deserved to be fired, however, is not the issue before the court. Johnston has failed to provide more than a scintilla of evidence from which the court could conclude that there is a genuine issue of material fact as to whether her removal of the confidential documents from the post office was protected activity under Title VII. Having reviewed the allegations and relevant evidence, the court **FINDS** that, as a matter of law, no reasonable factfinder could conclude that Johnston's removal of confidential consumer information from the post office was protected activity. Accordingly, Johnston has not established a prima facie case for retaliatory termination. The motion for summary judgment is **GRANTED**.

IV.    **Conclusion**

For the reasons discussed above, the defendant's Motion for Summary Judgment is **GRANTED**, and the plaintiff's complaint is hereby **DISMISSED with prejudice.**

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: *13 April 2012*

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

- 14 -